FILED
2017 Jul-28  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JAMES SULLIVAN**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **7:13-cv-01275-LSC** |
| | ) | |
| **PJ UNITED, INC. AND** | ) | |
| **DOUGLAS STEPHENS**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS'  BRIEF WITH REGARD TO PLAINTIFFS' FAILURE TO PARTICIPATE IN DISCOVERY (DOCS 1O6, 110, AND 133)

In addition to materials previously filed, Defendants submit the following brief in support of their motions to dismiss Plaintiffs who have not responded to written discovery requests pursuant to Fed. R. Civ. P. Rules 33 and 34 and/or who have not appeared for properly noticed depositions pursuant to Rule 30 (Docs. 106, 110, and 133).   The brief is restricted to controlling law from Congress, the Department of Labor ("DoL"), the  United States Supreme Court, and the Eleventh Circuit.

I.     $7.25 an Hour—No Less and No More

A.     Minimum Wage Compliance is Measured by the Workweek.

The Fair Labor Standards Act ("FLSA") provides a private right of action with regard to only two issues: the  minimum wage (29 U.S.C. § 206) and

1

maximum hours (29 U.S.C. § 207).  Plaintiffs bring a minimum wage claim.  (Doc. 58).  "Compliance with the FLSA is measured by the workweek.  *Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1237 (11th Cir. 2002) (citing 29 C.F.R. § 776.4).  The FLSA workweek for each operating-company Defendant is Monday through Sunday.  The relevant minimum hourly wage is $7.25.

      B.    <u>Each Plaintiff Must Prove His Individual Claim</u>.

In an FLSA collective action, each Plaintiff must prove individual damages on a workweek basis. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045–46, 194 L. Ed. 2d 124 (2016) ("Here, the parties do not dispute that there are important questions common to all class members, the most significant of which is whether time spent donning and doffing the required protective gear is compensable work under the FLSA. ... To be entitled to recovery, however, each employee must prove that the amount of time spent donning and doffing, when added to his or her regular hours, amounted to more than 40 hours in a given week.").  The FLSA does not require an employer to pay an employee more than the minimum wage. *Malivuk v. Ameripark, LLC*, No. 16-16310, 2017 WL 2491498, at *3 (11th Cir. June 9, 2017).

      C.    <u>Minimum Wage Compliance is Arithmetic</u>.

Plaintiffs allege in their First Amended Complaint that each Plaintiff was "paid precisely the federal minimum wage."[1] (Doc. 58, para. 33).  The total wage paid in a workweek is a concrete number ($x$).  Plaintiffs allege that they did not actually receive the minimum wage "during some or all workweeks" because they incurred costs[2] for seven discrete items "while delivering pizzas for the primary benefit of Defendants."  (Doc. 58, paras. 1, 23).  Those seven discrete items are:

1. gasoline
2. vehicle parts
3. vehicle fluids
4. automobile repair
5. automobile maintenance
6. automobile insurance
7. depreciation

(Doc. 58, para. 23).  The First Amended Complaint does not make any specific allegation with regard to individual parts, fluids, repairs, or maintenance items. No Plaintiff alleges that any discrete item would not have been purchased but for their employment with a Defendant.  The costs allegedly incurred are not job-specific, unique items, such as steel-toed boots, blasting caps, a certain set of wrenches, or unique clothing.  Each alleged cost incurred in a workweek is a concrete number, not a concept.  As will be shown below, the FLSA requires an employer to pay

---

[1] Discovery in this case has revealed that many Plaintiffs were paid $7.25 an hour in cash wages plus lawful tip credits, but some plaintiffs were paid more than $7.25 an hour.  There is no dispute of fact as to the differing hourly wage rates.

[2] The FLSA, related regulations, and case law seem to refer to costs and expense interchangeably.

only for costs paid by an employee which cost primarily benefit the employer and only to the extent the payment by the employee cuts into the minimum wage. The sum of all such required repayment costs incurred in a workweek is a concrete number $(z)^3$.

Defendants concede that gasoline consumed while delivering would not have been consumed absent the delivery. Defendants further concede that employment-related driving may have some affect on parts, fluids, repair, maintenance, and depreciation;[4] this is why Defendants provide a reimbursement to drivers for the use of private vehicles[5].

With regard to that reimbursement, each Plaintiff alleges that he received "a set amount for each delivery." (Doc. 58, para. 24). The sum of the "set amount" of reimbursement per delivery for all deliveries in a workeweek is a concrete number $(y)$, not a concept.

This case presents an arithmetic question. That question is whether $(x^6 + y) - z^7$ is greater than or equal to \$7.25. If so, Plaintiffs' minimum wage claims fails.

---

[3] As will be seen below "true $z$" is only those costs which the FLSA requires a Defendant to pay.

[4] These concessions do not equate to a concession that each alleged cost incurred was incurred for Defendants' primary benefit.

[5] Plaintiffs allege that Defendants provided them a reimbursement for automobile expenses. (Doc. 58, para. 24). The fact of reimbursement is not at issue.

[6] Plaintiffs point out, correctly, that overtime premiums paid cannot be included in any minimum wage compliance analysis. Defendants agree, because there is no overlap between minimum wage and maximum hours. *X* is only the total straight time cash wage plus wage-credit tips received for the workweek.

D.    <u>Regular Rate Does Not Apply to a Minimum Wage Claim</u>.

In a maximum hours case, a plaintiff must establish his regular rate of pay, which regular rate establishes the premium due for hours worked over 40 in a workweek. 29 U.S.C. § 207. The FLSA provides that the "regular rate" "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207. Plaintiffs do not allege that the reimbursement received by them is remuneration. The minumum wage does not affect the regular rate of pay. As a result, minimum wage claims and maximum wage claims are mutually exclusive, and many regulatory provision apply to one claim or the other, but not both.

29 C.F.R. Section 778.217 is a regular rate regulation. That section allows an employer to reimburse the "reasonably approximate amount expended by an employee, who is traveling 'over the road' on his employer's business, for transportation (whether by private car or common carrier)" without increasing that employee's regular rate of pay. If the reimbursement is unreasonably high, the amount of reimbursement over the "reasonably approximate amount" would be considered remuneration that would be taken into account in determining an individual employee's regular rate of pay for maximum hours purposes. As noted above, no Plaintiff brings a maximum hours claim, so they have no basis to

_____

[7] $Z$ is only costs that the were actually incurred in a given workweek for a Defendants' primary benefit.

challenge whether the reimbursement provided to any Plaintiff in any workweek is a "reasonably approximate amount expended by an employee, who is traveling "over the road" on his employer's business, for transportation (whether by private car or common carrier)."  In other words, the concept of a "reasonably approximate amount" of reimbursement described 29 C.F.R. Section 778.217 has no bearing on any Plaintiff's minimum wage liability claim or minimum wage damages.[8] Therefore, Defendants' method of determining the amount of reimburse any Plaintiff is not relevant; only the total amount of reimbursement for each workweek is relevant to Plaintiff's liability and damages claims.

II.    <u>Wages May Include Facilities</u>.

Because each Plaintiff concedes that he received in wages and lawful tips at least the minimum wage and an additional amount for the use of a vehicle to deliver, an assessment of each Plaintiff's FLSA claim begins with the "cost" issue. This is so because if no cost is chargeable to the employer or proved by a Plaintiff, that Plaintiff's FLSA minimum wage claim fails as a matter of law.

The Eleventh Circuit recognizes that "employers must provide workers' weekly wages 'in cash or in facilities', 'free and clear' of improper deductions, at 'the minimum wage.'" *Arriaga*, 305 F.3d at 1235.  The FLSA defines "Wage" as follows:

---

[8] At some point later, Defendants' reimbursement <u>may</u> be properly considered with regard to the issues of the FLSA statute of limitations and liquidated damages.

> **(m)** "Wage" paid to any employee includes **the reasonable cost**, **as determined by the Administrator**, to the employer of furnishing such employee with board, lodging, or **other facilities**, if such board, lodging, or other facilities are customarily furnished by such employer to his employees: *Provided*, That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement applicable to the particular employee: *Provided further*, That **the Secretary is authorized to determine the fair value of such** board, lodging, or **other facilities** for defined classes of employees and in defined areas, **based on average cost to the employer** or to groups of employers similarly situated, **or average value to groups** of employees, or other appropriate measures of fair value. Such evaluations, where applicable and pertinent, shall be used **in lieu of actual measure of cost** in determining the wage paid to any employee.

29 U.S.C. § 203(m) (emphasis added).  This is the only provision in the FLSA that allows for the determination of "reasonable cost" and the averaging of costs for minimum wage purposes, and only the Secretary of Labor (not a court or jury) has the statutory authority to engage in reasonable-cost determinations and averaging. The FLSA provides no private right of action for a determination of "reasonable costs" or "fair value."

> With regard to "reasonable cost," 29 C.F.R. Section 531.3 provides:

> (a) The term reasonable cost as used in section 3(m) of the Act is hereby determined to be not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees.

> (b) Reasonable cost does not include a profit to the employer or to any affiliated person.

7

(c) Except whenever any determination made under § 531.4 is applicable, the "reasonable cost" to the employer of furnishing the employee with board, lodging, or other facilities (including housing) is the cost of operation and maintenance including adequate depreciation plus a reasonable allowance (not more than 5 1/2 percent) for interest on the depreciated amount of capital invested by the employer: *Provided*, That if the total so computed is more than the fair rental value (or the fair price of the commodities or facilities offered for sale), the fair rental value (or the fair price of the commodities or facilities offered for sale) shall be the reasonable cost. The cost of operation and maintenance, the rate of depreciation, and the depreciated amount of capital invested by the employer shall be those arrived at under good accounting practices. As used in this paragraph, the term "good accounting practices" does not include accounting practices which have been rejected by the Internal Revenue Service for tax purposes, and the term "depreciation" includes obsolescence.

(d)(1) The cost of furnishing "facilities" found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages.
(2) The following is a list of facilities found by the Administrator to be primarily for the benefit of convenience of the employer. The list is intended to be illustrative rather than exclusive: (i) Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of any construction by and for the employer; (iii) the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform.

29 C.F.R. § 531.3.  In the context of a "tools of the trade" claim, the actual cost of the tool must be established.

The phrase "reasonably approximate amount" found in the regular rate regulation addressed above, Section  778.217, is not the phrase "reasonable cost"

found in 29 U.S.C. Section 203(m) or 29 C.F.R. Section 531.3.  They are facially

different concepts.  To the extent they are the same or substantially similar

concepts, on the Secretary of Labor has the statutory authority to determine

whether reimbursements paid to individual Plaintiffs in individual workweeks is a

"reasonably approximate amount."

III.     Wages, Primary Benefit, and Mutual Benefit.

29 C.F.R. Section 531.35 provides:

> Whether in cash or in facilities, "wages" cannot be considered to have
> been paid by the employer and received by the employee unless they
> are paid finally and unconditionally or "free and clear." The wage
> requirements of the Act will not be met where the employee "kicks-
> back" directly or indirectly to the employer or to another person for
> the employer's benefit the whole or part of the wage delivered to the
> employee. This is true whether the "kick-back" is made in cash or in
> other than cash. For example, if it is a requirement of the employer
> that the employee must provide tools of the trade which will be used
> in or are specifically required for the performance of the employer's
> particular work, there would be a violation of the Act in any
> **workweek** when **the cost of such tools purchased by the employee**
> cuts into the minimum or overtime wages required to be paid him
> under the Act.

(emphasis added).

The Eleventh Circuit considered Section 351.35 in *Arriaga*, wherein the

court stated: "If an expense is determined to be primarily for the benefit of the

employer, the employer must reimburse the employee during the workweek in

which the expense arose." *Arriaga,,* 305 F.3d at 1237.  By extension, if an expense

is not for the primary benefit of the employer, the expense cannot drive the employee's wages below the  minimum wage.

In analyzing the primary benefit of costs, the Eleventh Circuit considers each claimed cost individually. *Arriaga*, 305 F.3d at 1237 ("We thus must analyze whether the transportation, visa, and recruitment costs incurred by the Farmworkers are primarily for the benefit or convenience of the employer. If so, the Growers must reimburse the Farmworkers **up to the point that their wages satisfy the FLSA minimum wage**.")[9] (emphasis added).  The DoL agrees that "each expense … must be analyzed separately in its proper context."  73 Fed.Reg. 78020.[10]

The *Arriaga* decision was rendered in the context of the recruitment of and travel to and from "work" by migrant farm workers as well as the cost of H-2A work visas. The *Arriaga* panel wrote:

> An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage. *See* 29 C.F.R. § 531.36(b). This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment. *See id.* § 531.35.

> An employer is allowed to count as wages the reasonable cost "of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by

---

[9] An employee is not entitled to recover more than the minimum wage.
[10] A copy of the referenced portion of the Federal Register is attached hereto as Appendix A.

such employer to his employees." 29 U.S.C. § 203(m). Although the FLSA does not define "other facilities", DOL has promulgated regulations dedicated to this term which identify circumstances when an employer may claim a wage credit or deduction for the provision of "other facilities." *See* 29 C.F.R. § 531.32. One of the DOL regulations states that "the cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." *Id.* § 531.32(c).

For guidance in applying this test, DOL regulations provide "a list of facilities found by the Administrator to be primarily for the benefit [or] convenience of the employer," which includes tools and uniforms. *Id.* § 531.3(d)(2). The expenses which are primarily for the benefit of the employee, and therefore constitute other facilities, include: meals; dormitory rooms; housing; merchandise from company stores such as "food, clothing, and household effects"; and fuel, electricity, water and gas "furnished for the noncommercial personal use of the employee." *Id.* § 531.32(a).

If an expense is determined to be primarily for the benefit of the employer, the employer must reimburse the employee during the workweek in which the expense arose. *See* 29 C.F.R. § 531.35.

…

**Certain costs**—for example, food for employees and safety equipment used by employees—**categorically are either for the benefit of the employee or the employer**. Other categories are more nuanced; **the costs are primarily for the benefit of the employer or the employee depending on the specific facts**. By looking at items classified by the regulations as "other facilities", **it is apparent that the line is drawn based on whether the employment-related cost is a personal expense that would arise as a normal living expense**.

Uniforms provide an illustration of this dividing line. "Charges for rental uniforms," when required by the employment, are considered to be primarily for the benefit of the employer. 29 C.F.R. § 531.32(c). Costs such as drycleaning, ironing, or other special treatment must be

reimbursed by the employer when such expenses reduce wages below the minimum wage, and such uniform maintenance is required by the nature of the work. See 29 C.F.R. § 531.3(d)(2) (stating that "the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform," is an expense primarily for the benefit of the employer). As to the question of what constitutes a required uniform, DOL has taken a practical approach; **if the employer "merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress[,] the garments chosen would not be considered uniforms ..." As such attire would be considered "ordinary street clothing" rather than a uniform, the expense of purchasing and maintaining such clothing is an expense an employee would encounter as a normal living expense, and is therefore not primarily for the benefit of the employer**.

*Arriaga*, 305 F.3d at 1236-1244 (internal citations omitted) (emphasis added).

*Arriaga* might be read as creating an "either or" situation (that is, a cost is either for the employer's primary benefit or the employee's primary benefit) irrespective of the fact that the decision expressly limits the "either/or" to "certain costs." *Arriaga*, 305 F.3d at 1243. Such an approach, which the undersigned does not believe the *Arriaga* court took, would create no middle ground for expenses that benefit both the employer and the employee. Although *Arriaga* did not expressly hold that there is no middle ground, the DoL subsequently resolved that issue.

Following *Arriaga*, the DoL issued a Final Rule wherein it clarified 29 C.F.R. Section 531.35. The Final Rule states, in part:

Separate from the question whether items or expenses furnished or paid for by the employer can be counted as wages paid to the

employee, the FLSA regulations contain provisions governing the treatment under the FLSA of costs and expenses incurred by employees. The regulations specify that wages, whether paid in cash or in facilities, cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally, or "free and clear." 29 CFR 531.35. Thus, "[t]he wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick-back' is made in cash or in other than cash. For example, if the employer requires that the employee must provide tools of the trade that will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." Id. The regulations treat employer deductions from an employee's wages for costs incurred by the employer as though the deductions were a payment from the employee to the employer for the items furnished or services rendered by the employer, and applies the standards set forth in the "kick-back" provisions at 29 CFR 531.35 to those payments. Thus, "[d]eductions for articles such as tools, miners' lamps, dynamite caps, and other items which do not constitute 'board, lodging, or other facilities' " are illegal "**to the extent that they reduce the wages of the employee in any such workweek below the minimum required by the Act**."[11] 29 CFR 531.36(b).

In sum, where an employer has paid for a particular item or service, under certain circumstances it may, pursuant to 29 U.S.C. 203(m), count that payment as wages paid to the employee. On the other hand, **when an employee has paid for such an item or service, an analysis under 29 CFR 531.35 is required to determine whether the payment constitutes a "kick-back" of wages to the employer that should be treated as a deduction from the employee's wages**.

  **The _Arriaga_ court seems to have assumed that all expenses necessarily fall into one of these two categories**—that either they

---

[11] "To the extent" requires a precise, mathematic determination grounded at $7.25.

qualify as wages under 29 U.S.C. 203(m) or they constitute a "kick-back" under 29 CFR 531.35. See *Arriaga*, 305 F.3d at 1241-42 (stating that if a payment "may not be counted as wages" under 29 U.S.C. 203(m), then "the employer therefore would be required to reimburse the expense up to the point the FLSA minimum wage provisions have been met" under 29 CFR 531.35 and 29 CFR 531.36). **That is incorrect**. For example, if an employer were to give an employee a valuable item that was not "customarily furnished" to his or her employees, the employer would not be able to count the value of that item as wages under 29 U.S.C. 203(m) unless the employer "customarily furnished" the item to his or her employees. Nevertheless, since the employee paid nothing for that item, it clearly would not constitute a "kick-back" of wages to the employer that would have to be deducted from the employee's wages for purposes of determining whether the employer met its minimum wage obligations under 29 U.S.C. 206(a). Similarly, if a grocery employee bought a loaf of bread off the shelf at the grocery store where he or she worked as part of an arms-length commercial transaction, the payment made by the employee to the employer would not constitute a "kick-back" of wages to the employer, nor would the loaf of bread sold by the employer to the employee be able to be counted toward the employee's wages under 29 U.S.C. 203(m). Both parties would presumably benefit equally from such a transaction—it would neither be primarily for the benefit of the employer, nor would it be primarily for the benefit of the employee.

Expenses paid by an employer that are primarily for the employer's benefit cannot be counted toward wages under 29 U.S.C. 203(m). See 29 CFR 531.3(d). Similarly, expenses paid by an employee cannot constitute a "kick-back" unless they are for the employer's benefit. See 29 CFR 531.35. An analysis conducted under 29 U.S.C. 203(m) determining that a particular kind of expense is primarily for the benefit of the employer will thus generally carry through to establish that the same kind of expense is primarily for the benefit of the employer under 29 CFR 531.35. Each expense, however, must be analyzed separately in its proper context.

…

To be compensable under the FLSA, however, **the question is not whether an employer receives some benefit from an item or paid-for cost, but rather whether they receive the primary benefit**. Significantly, despite the fact that employers nearly always derive some benefit from the hiring of state-side workers as well, such workers' relocation costs generally have not been considered to be "primarily for the benefit of the employer." That is so because the worker benefits from the travel either more than or just as much as the employer.

(73 FR 78020-29; Appendix, p. 29, 31).

The Eleventh Circuit requires deference to the Secretary of Labor in this context.

Under the deferential standard of *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), we accept the interpretation of the Secretary that an employer may not receive wage credits under section 203(m) for the housing provided H–2A workers because this expense primarily benefits the employer under section 531.3(d)(1). "Because the ['primarily benefits'] test is a creature of the Secretary's own regulations, [her] interpretation of it is[ ] ... controlling unless 'plainly erroneous or inconsistent with the regulation.' " It is irrelevant "that the Secretary's interpretation comes to us in the form of a legal brief; ... that does not, in the circumstances of this case, make it unworthy of deference. The Secretary's position is in no sense a '*post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack."

*Ramos-Barrientos v. Bland*, 661 F.3d 587, 596 (11th Cir. 2011) (internal citations omitted).  Plaintiffs have not challenged the Final Rule quoted above as being "plainly erroneous or inconsistent with the 29 C.F.R. Section 351.35.

15

IV.   *Mt. Clemens*, Recordkeeping, and Represtative Testimony

It is axiomatic that unless otherwise relaxed each Plaintiff in this FLSA collective action bears the burden of proving that one or more Defendants employed him and failed to pay him the minimum wage in one or more workweeks. The Eleventh Circuit's FLSA Pattern Jury Instruction provides, in part:

> To succeed on [his/her] claim against [name of defendant], [name of plaintiff] must prove each of the following facts by a preponderance of the evidence:
> First: [Name of plaintiff] was an employee of [name of defendant] and was [engaged in commerce or in the production of goods for commerce] [employed by an enterprise engaged in commerce or in the production of goods for commerce]; and
> Second:      [Name of defendant] failed to pay [name of plaintiff] the [minimum wage/overtime pay] required by law.
> …
>
> [Minimum wage claim: The minimum wage required by the FLSA during the period involved in this case was $ [minimum wage] per hour. [To determine whether an employer has paid the minimum wage, it is entitled to a credit for the reasonable costs of furnishing certain non-cash items to [name of plaintiff] [unless those costs are excluded from [name of plaintiff]'s wages under the terms of a union contract that applies to [name of plaintiff]], such as meals and lodging for the employee's benefit, and the employee voluntarily accepts them.]
> …
>
> The amount of damages is the difference between the amount [name of plaintiff] should have been paid and the amount [he/she] was actually paid.
> …

[**Inadequate Records**: The law requires an employer to keep records of **how many hours** [his/her/its] employees work and **the amount they are paid**. In this case, [name of plaintiff] claims that [name of defendant] failed to keep and maintain adequate records of [his/her] **hours and pay**. [Name of plaintiff] also claims that [name of **defendant]'s failure** to **keep** and **maintain** adequate records has made it difficult for [name of plaintiff] to prove the exact amount of [his/her] claim.

If you find that [name of defendant] failed to keep adequate time and pay records for [name of plaintiff] and that [name of plaintiff] performed work for which [he/she] should have been paid, [name of plaintiff] may recover a reasonable estimation of the amount of [his/her] damages. But to recover this amount, [name of plaintiff] must prove by a preponderance of the evidence a reasonable estimation of the amount and extent of the work for which [he/she] seeks pay.]

(emphasis added).

Plaintiffs have long asserted that this case is proceeding under a relaxed burden of proof and on a representation basis because that is how "pizza cases" are handled.  Neither the FLSA, the United States Supreme Court, nor the Eleventh Circuit proscribe special rules for "pizza cases."

The concept of relaxing an employee's burden of proof in an FLSA case under certain circumstances stems from *Anderson v. Mount Clemens Pottery*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).  With regard to that case, the Eleventh Circuit has held:

In *Mt. Clemens,* the Supreme Court authorized a burden-shifting scheme designed to facilitate the ability of plaintiffs to prove an FLSA violation **where the employer failed to maintain proper records (such as how many hours its employees worked and the amount of**

**pay)**. *Id.* at 686–88, 66 S.Ct. at 1192. To prevent workers from being penalized **by the employer's failure** to keep adequate records, the Supreme Court provided that plaintiffs could meet their burden of proof so long as they "prove[ ] that [they have] in fact performed work for which [they were] improperly compensated" and "produce [ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687, 66 S.Ct. at 1192. Although *Mt. Clemens* never used the term "**representative testimony**," subsequent courts have interpreted it to authorize some employees to testify about the number of hours they worked and how much they were paid so that other non-testifying plaintiffs could show the same thing by inference. *See, e.g., Reich,* 43 F.3d at 951 ("Under *Mt. Clemens,* the Secretary can present testimony from representative employees as part of his proof of the prima facie case."); *Donovan,* 780 F.2d at 1116 ("There is no requirement that to establish a *Mt. Clemens* pattern or practice, testimony must refer to all nontestifying employees. Such a requirement would thwart the purposes of the sort of representational testimony clearly contemplated by *Mt. Clemens.*"); *DeSisto,* 929 F.2d at 792 (interpreting *Mt. Clemens* burden-shifting and noting that the plaintiff "can rely on testimony and evidence from representative employees to meet the initial burden of proof requirement"); *McLaughlin v. Ho Fat Seto,* 850 F.2d 586, 589 (9th Cir.1988) ("We hold that the *Mt. Clemens Pottery* standard allows district courts to award back wages under the FLSA to non-testifying employees based upon the **fairly representative testimony** of other employees.").

As a result, **most of the circuit cases addressing how many FLSA plaintiffs need to testify before their testimony can be considered representative of the group involve an employer's failure to keep adequate records and the plaintiffs' use of the *Mt. Clemens* burden-shifting scheme**. *See, e.g., McLaughlin,* 850 F.2d at 589; *Donovan v. Bel–Loc Diner, Inc.,* 780 F.2d 1113, 1115–16 (4th Cir.1985), *disapproved of on other grounds, McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *Brennan v. Gen. Motors Acceptance Corp.,* 482 F.2d 825, 829 (5th Cir.1973).

18

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1278–79 (11th Cir. 2008) (emphasis added).

Notwithstanding Plaintiffs' insistence that this case **is** a relaxed-burden/representative-testimony case, the Court has not made such a decision. Nor should the court allow this case to proceed as one.

The FLSA establishes an employer's limited recordkeeping obligation by providing: "Every employer subject to any provision of this chapter or of any order issued under this chapter shall **make**, **keep**, and **preserve** such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment **maintained by him** …" 29 U.S.C.A. § 211(c) (emphasis added). The FLSA does not require an employer to **obtain** records from an employee; nor does it provide employers any mechanism to coerce an employee into providing records, even though such records might relate to the employee's employment.

Defendants have produced pay stubs that reflect hours worked, cash wages paid, and tips received. In addition, Defendants have produced checkout reports that on a daily basis reflect the amount of cash paid to each Plaintiff as reimbursement for the use of a vehicle for deliveries. Records of vehicle costs allegedly incurred by Plaintiffs are not Defendants' records; they are Plaintiffs' records.

19

Whether Plaintiffs maintained records of such costs has been the subject of disputed discovery requests in this case.  For example, Defendants served Fed. R. Civ. P. Rule 34 document requests on each Consenting Plaintiff.  Request number 10 requested the production of the following:

> 10.    For each Work Week in the Relevant Period, produce all documents that demonstrate with regard to each Vehicle:
>     a. Fixed Costs that You claim You incurred,
>     b. Fixed Costs that You claim You actually paid,
>     c. Operational Costs that You claim You incurred, and
>     d. Operational Costs that You claim You actually paid.

Defendants served interrogatories under Fed. R. Civ. P. 33 in which they asked:

> 10.    For each Work Week in the Relevant Period, state each Fixed Cost, including the date and amount:
> a. that You incurred and
> b. that You paid.
>                                     …
>
> 12.    For each Work Week in the Relevant Period, state each Operational Cost, including the date and amount:
> a. that You incurred and
> b. that You paid

Plaintiffs objected to the discovery requests, taking the litigation position in this case that information regarding actual vehicle costs is irrelevant to their minimum wage claim.  (Doc. 85, p. 12).  Plaintiffs simply are not entitled under *Mt. Clemens* to a relaxed burden of proof or representative testimony on the theory that Defendants violated their FLSA recordkeeping duty by failing to obtain

20

records from Plaintiffs that Plaintiffs view as irrelevant to their minimum wage claims because Plaintiffs cannot show that Defendants alleged failure prejudiced Plaintiffs in meeting their individual burdens of proof.  Defendants simply did not fail to discharge its FLSA recordkeeping obligation in way that has made Plaintiff's burden of proof "an impossible hurdle" for any individual Plaintiff.  *Mt. Clemens*, 228 U.S. at 687.  *See also*, *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007).

The court did not allow Defendants to serve document request 10 on the Consenting Plaintiffs, but it did allow Defendants to serve a single Rule 34 document request that follows 22 Rule 33 interrogatories.  That document request simply states: "Please attach any supporting documentation you have for your responses to he questions above."  As the Court is aware, a substantial number of Plaintiffs have completely failed to respond to Defendants limited discovery requests.   Of those who have responded, probably fewer than 20 attached documents. Plaintiffs do not take the position that the documents produced through court-approved discovery in this civil action can serve as representative evidence of any Plaintiff's claimed vehicle costs.  Plaintiffs' discovery responses received to date are, including documents produced, are in the record.  (Docs. 116, 134, 135, 136, 137, and 138).  So even armed with the Federal Rules of Civil Procedure, Defendants have been unable to from Plaintiffs the very documents that Plaintiffs

allege Defendants failed to maintain such that their individual burdens of proof should be relaxed and representative testimony allowed. Such a fact pattern is simply not consistent with *Mt. Clemen'* relaxed proof or representative testimony holding.

V.      *Mt. Clemens'* Application to Costs/Expense Claims

Even if Plaintiffs' individual vehicle cost records were records that required the FLSA required Defendants to maintain, keep, and preserve, it is not clear (in a binding-decision way) that Plaintiffs would be entitled to a relaxed burden of proof or proof through representative testimony. *Mt. Clemens* involved a maximum hours claim but has uniformly been applied to minimum wage claims, mostly in the FLSA exemption context. The undersigned has found no Eleventh Circuit case that extends the *Mt. Clemens* burden shifting to the issue of "facilities" and the costs thereof, but a panel of the Eleventh Circuit stated in a footnote:

> It is arguable that the burden of proof standard outlined in *Anderson v. Mt. Clemens Pottery Co.*, supra, discussed above in Part III of this opinion, would apply to the issue of who has the burden of proving reasonable cost. We note that even if this test applies, the former Fifth Circuit in *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 420 (5th Cir. 1975), interpreted this test to place on the employer a burden of proving by the preponderance of the evidence that it had complied with the FLSA once the plaintiff established a prima facie case. *See also Shultz v. Hinojosa*, 432 F.2d 259, 261 (5th Cir. 1970) (holding that where employer fails to keep records, burden is on employer to "disprove" evidence that the employees were improperly compensated). Applied to a case involving a claimed deduction for the reasonable cost of provided board, lodging, or other facilities, we believe that once the plaintiff establishes a prima facie case, it is the

responsibility of the employer to prove that, under 3(m), § he is entitled to a credit for the reasonable cost of providing meals, lodging, or other facilities. We do not believe that an employee must, as a part of his prima facie case, prove that the employer is not entitled to such a credit where the employer has not maintained the required records to substantiate the claimed credit. Once the plaintiff shows as a matter of just and reasonable inference that the wages paid to him did not satisfy the requirements of the FLSA, the issue of whether an employer is entitled to a credit is a matter upon which the employer bears the burden of proof under *Mt. Clemens*.

*Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 (11th Cir. 1982).

Because an employer has the statutory right to claim a "facilities" credit against the minimum wage, it makes sense that the employer would bear the burden of proving the credit.  In such a case, the records would naturally show that the cash wage paid was less than the minimum wage, thereby establishing a prima facie shortfall.  It makes sense in that context that an employer would bear the burden of proving that cost or value of the facility to the employee was sufficient to meet the minimum wage.  This makes more sense in the recordkeeping context. If an employer is required to keep record showing wages paid but allows a facilities credit against the wage, it makes sense that the employer would have to keep a record of the facility displaced part of the minimum wage or to bear the burden of proving the value of the wage-displacing facility.

On the other hand, where, as here, the required records show that at least the minimum wage was paid (and even more for vehicle reimbursement) and where an

23

employee claims that a tool of the trade purchased by the employee cuts into the minimum wage, it makes sense that the employee would bear the burden of proving the purchase of the tool, the cost of the tool, the timing of the purchase, and that each tool purchased was purchased for the employer's primary benefit. Otherwise, an employee would have a cause of action essentially for an accounting of minimum wage compliance.  The FLSA provides no such cause of action.

VI.   _Bouaphakeo_ and Its Unique Circumstances

Defendants expect Plaintiffs to rely on _Tyson Foods, Inc. v. Bouaphakeo, supra,_ as a basis for relaxing their individualized burdens of proving liability and damages through proof of actual vehicle expenses and by representative testimony. Such reliance would be misplaced.

In _Bouaphakeo_, the Supreme Court simply declined categorically to reject the use of representative evidence in class actions. _Bouaphakeo_, 136 S.Ct. at 1046 ("petioner … maintain[s] that the Court should announce a broad rule against the use in class actions of what the parties call representative evidence.  A categorical exclusion of that sort, however, would make little sense.  A representative or statistical sample, like all evidence, is a means to establish or defend against liability.  Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of a the relevant cause of action.")   The _Bouaphakeo_

court then applied *Mt. Clemens* to the particular circumstance of the case. *Id*. at 1047 ("In this suit, as in *Mt. Clemens*, respondents sought to introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records."). *Bouaphakeo* simply stands as a case in which the Court declined to adopt a rule rejecting representative evidence in all class or collective actions and that followed its prior *Mt. Clemens* decision based on the unique facts of the case—Tyson Foods failure to maintain time records.

Because this case does not involve Defendants' failure to keep records in compliance with the FLSA, neither *Bouaphakeo* nor *Mt. Clemens* has any application, no Plaintiff's burden of proof is relaxed, and representative testimony is inappropriate for the purpose of any Plaintiff's attempt to meet his burden of proving liability or damages.

VII.   Plaintiffs' Expense Aggregation and Estimation in This Case

Plaintiffs concede that they did not track their "actual automobile expenses." (Doc. 58, para. 37).  Thus, Plaintiffs make no allegation—and base no claim—on their "actual automobile expense."[12]

Instead, Plaintiffs allege that they experienced "an average delivery distance of over 5 miles" and that "Plaintiff Sullivan typically averaged approximately 2

---

[12] Nor did Defendants did not base their reimbursement any Plaintiff's actual automobile expenses.  But it does no matter <u>how</u> Defendants determined what remuneration to provide for a driver's vehicle use, it only matters <u>how</u> <u>much</u> the reimbursement was for each workweek in comparison to $7.25 and the actual expenses paid by the driver that workweek for, which expenses were paid for the relevant Defendant's primary benefit.

deliveries per hour." (Doc. 58, paras. 35, 39). They then allege that they experienced average reimbursement rates ranging from "approximately $.18 per mile ($0.90 per delivery/5 miles per delivery) to approximately $.23 per mile ($1.15 per delivery/5 miles per delivery)."  Using these approximate averages in lieu of actual reimbursements paid, they then calculate a range of numbers which they subtract from the IRS reimbursement rate[13] to approximate a range of  per-mile under-reimbursements from which they then postulate an approximate range of hourly "kick-back" which, they claim, effectively reduced Plaintiffs' FLSA wage to a rate below the minimum wage.  (Doc. 58, paras. 32-47).

Neither the FLSA nor any decision of the United States Supreme Court or Eleventh Circuit countenances this method of guessing at either liablity or damages.  Indeed, the FLSA authorizes only the Secretary of Labor to average and to determine "reasonable costs."

VIII.   <u>Defendants Are Entitled To Discovery or Dismissal</u>

Regardless of Plaintiffs' theory of liability or damages, Defendants believe that they can successfully defend Plaintiffs' minimum wage claims if they can show that the amount paid for reimbursement for each workweek (plus any straight-time wage over $7.25) is greater than the amount of expenses Plaintiffs can prove they actually paid during those workweeks for the primary benefit of a

---

[13] The IRS reimbursement rate is the largest non-taxable amount of vehicle reimbursement allowed by the IRS. Neither the IRS nor the FLSA required reimbursement at the IRS' maximum non-taxable rate.

Defendant.  Defendants have produced the workweek reimbursement payments, but it can obtain the expense data only through discovery—which data Defendants have requested from Plaintiffs but which Plaintiffs have refused to produce.

Defendant have attempted to obtain discovery from Plaintiffs through court approved Fed. R. Civ. P. deposition notices, interrogatories, and document requests consistent with the court's Scheduling Order.  To the extent Plaintiffs have not participated in properly noticed depositions or properly served interrogatories and requests for production, they are due to be dismissed as parties.


/s/William K. Hancock
William K. Hancock
Attorney for Defendants

**OF COUNSEL:**
GALLOWAY, SCOTT, MOSS & HANCOCK, LLC
2200 Woodcrest Place, Suite 310
Birmingham, AL 35209
205.949.5580
205.949.5581 *fax*


I hereby certify to the best of my knowledge that notice of filing will be sent to those who are registered participants in the electronic filing system as follows:

| | |
|---|---|
| W. Lewis Garrison, Jr. | Richard M. Paul III |
| William L. Bross | Paul McInnes LLP |
| Brandy Robertson | 2000 Baltimore, Suite 100 |
| Taylor C. Bartlett | Kansas City, MO 64108 |

Heninger Garrison Davis, LLC

2224 First Avenue North

Birmingham, AL 35203

Mark A. Potashnick

Weinhaus  & Potashnick

150 Olive Blvd., Suite 133

St. Louis, MO 63141

_____ */s/ William K. Hancock*_____